IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE ALFREDO LOPEZ-GUTIERREZ,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br><br><br>Case No. 2:05-CR-867 TS |

This matter comes before the Court on Defendant's Motion to Suppress.[1] Defendant seeks to suppress controlled substances seized from a vehicle during a traffic stop. Defendant filed this Motion to Suppress Evidence on January 19, 2006.[2] An evidentiary hearing was held on the Motion on August 11, 2006. Defendant filed a Memorandum in Support of Motion to Suppress Evidence on September 8, 2006,[3] and the Government filed a Memorandum in

---

[1]Docket No. 13.

[2]*Id*.

[3]Docket No. 30.

1

Opposition to Defendant's Motion to Suppress on October 2, 2006.[4]  Defendant filed a reply on October 27, 2006.[5]

I.  BACKGROUND

The Court finds the following facts:  On November 13, 2005, at 7:24 a.m., Officer Jason Thomas ("Thomas"), a K-9 officer from the Cedar City Police Department, was observing traffic outside of Cedar City.  Thomas noticed a white SUV with extremely dark, tinted side windows.[6]  Thomas pulled onto the freeway and followed the vehicle.  He saw it swerve in its own lane and then pull immediately behind another vehicle, only one car-length apart.  Thomas determined that the vehicle was following too closely for its speed, and initiated a traffic stop.[7]  Thomas noticed a female passenger and a male driver, the Defendant.  Thomas spoke with Defendant, requesting a driver's license, registration and proof of insurance.  While Defendant was looking for his registration, Thomas spoke with him about his travels.  Defendant said he and his passenger had spent about a week in Las Vegas on vacation, and were traveling to Kansas.

Thomas asked Defendant if he owned the vehicle.  Defendant said he did not.  Thomas asked who the owner was.  Defendant hesitated, looked down at the registration which was now in his hand, and said "Reynaldo," his cousin.  Defendant then gave Thomas the registration.  Thomas noticed that the registration was in the name of Reynaldo Ruiz Herrera from Kansas

---

[4]Docket No. 33.

[5]Docket No. 37

[6]Such windows, if too dark, are prohibited under Utah law.

[7]The stop was recorded by video, although the audio portion worked only intermittently.

City, Kansas, and that it had expired on September 30, 2005.  Thomas then asked Defendant if he knew either Reynaldo's last name, or his telephone number.  Defendant did not.  Although Thomas suspected the vehicle was stolen, he could not check the vehicle on his computer because the system was then unavailable.  Defendant and Thomas spoke in English, and Thomas noted no difficulty in communication.

Thomas also noticed a number of things inside the vehicle as he spoke with Defendant: one small suitcase, which he believed inconsistent with a week-long trip to Las Vegas by two people; a glued-on air bag compartment and scarred seat belt bolts, which led him to suspect hidden compartments; a small picture on the dashboard, and another on a necklace worn by Defendant, of Jesus Malverde, which Thomas knew was the patron saint of drug traffickers; a rose and an air freshener which could be used as distractions; and three cell phones.

Thomas asked Defendant if he would come back to his patrol car, and told him that he was writing him a warning citation for the various traffic offenses he had observed.  Defendant then exited the vehicle and, unsolicited, assumed a "frisk" position.  Thomas told Defendant that wasn't necessary, and motioned for him to come back to his car.  The two entered Thomas's car and sat in the front seats.

As Thomas was filling out the warning citation, he asked Defendant where he had stayed in Las Vegas. Defendant replied that he had stayed at a friend's house.  Thomas asked about the female passenger.  Defendant said that she had been his girlfriend for two months and had been on vacation with him.  Thomas asked Defendant about the vehicle.  Defendant said that it belonged to his cousin Reynaldo, who was located in Mexico, and who had let him borrow it.

Defendant also said that the insurance on the vehicle was in Defendant's name.  The vehicle's registration showed that the insurance policy was held by Reynaldo Ruiz Herrera.  Thomas asked Defendant again how long he had been in Las Vegas.  This time, Defendant said three to four days.  Defendant then made an unsolicited statement that a friend had taken Defendant's vehicle the night before.

Thomas then asked Defendant if there were illegal drugs in the car.  Defendant replied "nothing."  At this point, Thomas asked Defendant if he could look in the vehicle to see if there was anything illegal inside, and Mr. Lopez said, "yeah."  Thomas had not returned any of Defendant's documents.  At some point in the search, an insurance card in Defendant's name was located in the vehicle, which showed an expiration date of November 5, 2005.

Thomas then returned to the vehicle, and spoke with the female passenger.  Thomas asked her about the vehicle.  She stated that she did not know who owned it.  She also stated that she had known Defendant for four to five months, and had stayed with him in a motel in Las Vegas.  Thomas explained that Defendant had given consent to search the vehicle.  He asked the female passenger for consent to search her personal belongings, which she gave.  Thomas then retrieved his drug-sniffing dog, and began an exterior sniff of the vehicle.  As the dog began its search, Thomas began speaking to himself out loud.  Thomas mentioned the discrepancies in the occupants' stories.  The dog alerted to the odor of narcotics at the tailgate.  Thomas deployed the dog inside the vehicle.  The dog again alerted at the backseat, and aggressively indicated at the back of the seat.  Thomas then called for a backup officer.  Thomas also called Sergeant Ryan Bauer of the Utah Highway Patrol.  Thomas explained that he was concerned that there were

drugs in the car because: Defendant told him a friend had recently taken his vehicle; the occupants' stories contained various discrepancies; the dog had indicated; and the occupants didn't have much luggage.

When backup arrived, Thomas resumed searching the vehicle. Backup officer Corporal Williams mentioned at some point that the air bag had been glued back into place. Thomas reached his hand inside the seat where his dog had indicated and found four plastic bags which contained methamphetamine. Defendant now seeks to suppress this evidence.

## II.  DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[8] "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment."[9] Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."[10] These exceptions include searches based on valid consent,[11] and searches of automobiles based on probable cause.[12] At issue is whether: (A) Defendant has standing to bring the Motion, (B) Thomas obtained valid consent to search the vehicle, and (C) the search of the vehicle was based on probable cause.

---

[8] U.S. Const. amend IV.

[9] *United States v. Hunnicut*, 135 F.3d 1345, 1348 (10th Cir. 1998).

[10] *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (internal quotations and citations omitted).

[11] *United States v. Butler*, 992 F.2d 556, 562 (10th Cir. 1992).

[12] *United States v. Lopez*, 777 F.2d 543, 550 (10th Cir. 1985).

A. Standing

Defendant asserts that he has standing for his Motion because he had a legitimate possessory interest in the searched vehicle. The Government contests Defendant's assertion.

> To establish standing to challenge a car search, the defendant bears the burden of showing that he had a 'legitimate possessory interest in or [a] lawful control over the car.' [T]he focus of the inquiry is on reasonable expectations . . . . [W]e consider important, but not determinative, the following factors: '(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that the had a legitimate possessory interest in the vehicle.' Where the proponent of a motion to suppress is the car's driver but not the registered owner . . . the proponent bears the burden of establishing 'that he gained possession from the owner or someone with authority to grant possession'[13]

Defendant first argues that the above-mentioned factors, from the case of *United States v. Allen*,[14] are not determinative. Next, Defendant argues that he had a possessory interest in the vehicle upon two bases: (1) Defendant told Thomas that he borrowed the vehicle from his cousin, who had authority to lend him the vehicle as evidenced by the vehicle's registration in his cousin's name; and (2) during the stop, Defendant produced proof of insurance for the vehicle in his name.

The Government counters that Defendant has no legitimate possessory interest. First, the Government emphasizes that, as per the *Allen* factors, Defendant: has not asserted ownership over the items seized, and did not testify at the suppression hearing as to either his expectation of

---

[13] *United States v. Valdez-Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (quoting *United States v. Rubio-Rivera*, 917 F.2d 1271, 1274-75 (10th Cir. 1990) and *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)).

[14] 235 F.3d at 489.

privacy or whether he had a legitimate possessory interest in the vehicle.  Second, the Government disputes that Defendant legitimately borrowed the vehicle from an authorized individual, citing the following evidence:  Defendant had to look at the vehicle's registration to ascertain the name of the owner; Defendant could not produce either the last name or phone number of his purported cousin from which the vehicle was borrowed; and, while Defendant said that his purported cousin was in Mexico, the vehicle's registration was listed in the State of Kansas.  Finally, the Government asserts that there is nothing to demonstrate that the proof of insurance Defendant showed was valid, and even if it was valid, at some point, the policy date on the card had subsequently expired.

The Court finds that Defendant has not met his burden of establishing a legitimate possessory interest in the vehicle, and that he therefore does not have standing to bring his Motion.  The Court notes that all of the *Allen* factors weigh against a finding of a possessory interest in this case.  While these factors are not determinative, they are important.

Moreover, Defendant has failed to produce evidence to counter the Government's evidence that Defendant did not, in fact, know the owner of the vehicle, and therefore, could not legitimately be in possession of it.  Although the Court believes that the difference in locations of the purported cousin and the state of registration is insignificant, that Defendant had to look at the registration to ascertain the name of the owner, and did not know the last name of his purported cousin, are significant.  Such facts indicate that Defendant did not know the owner of the vehicle, and was not lawfully in possession of the vehicle.

Also, even if the Court were to consider Defendant's alleged proof of insurance, such would not be determinative, in light of the other evidence and the *Allen* factors above, as it appears that the underlying policy had expired.  However, as set forth more fully below, even if Defendant had standing to bring the Motion, Defendant's Motion would be denied on its merits.

B.  Consent to Search

Defendant argues that the consent he gave for the vehicle to be searched is invalid because Thomas did not have reasonable suspicion to justify shifting the scope of the traffic stop to an investigative detention relating to drugs.  Also, Defendant contends that the consent he gave to Thomas was invalid because it was given before the return of Defendant's documents. Defendant cites *United States v. Gonzalez-Lerma*[15] for the proposition that "[t]his Circuit follows the bright-line rule that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him."[16]  Defendant implies that valid consent cannot be given in a such non-consensual encounter.

The Court notes that the rule cited by Defendant is meant to address only whether an officer may conduct further questioning unrelated to the initial reasons for the traffic stop, and not specifically whether a defendant gives valid consent to search during a justified detention. The issue of whether Defendant gave specific and valid consent to the search of his vehicle is separate from that of whether Thomas was justified in extending the scope of his questioning.[17]

---

[15] 14 F.3d 1479 (10th Cir. 1994).

[16] *Id.* at 1483.

[17] "Consent . . . may be voluntary even though the consenting party is being detained at the time consent is given." *United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997).

8

With regard to extending a traffic stop into an investigative detention, "[f]urther questioning is permissible in two circumstances.  First, . . . if [the officer] has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring . . . [and s]econd, . . . if the initial detention has become a consensual encounter."[18]  Although the questioning in this case was not conducted pursuant to a consensual encounter, as per the rule in *Gonzalez-Lerma,* Thomas was justified in extending the traffic stop, as discussed below, because he had an objectively reasonable and articulable suspicion of illegal drug activity.  Accordingly, the Court addresses (i) whether Thomas had reasonable suspicion of drug-related activity to justify the investigative detention, and (ii) whether the Defendant gave valid consent for the vehicle search.

    *i. Reasonable Suspicion*

Defendant contends that the factual evidence is insufficient to demonstrate that, at the time Thomas began questioning Defendant about drugs, and shortly thereafter, when he requested consent to search the vehicle, Thomas could have had reasonable suspicion of drug-related activity.  The Government contends that there is ample evidence to demonstrate that Thomas had reasonable suspicion.

"Whether . . . an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend upon any one factor but on the totality of the

---

[18] *Id.* at 1483.

circumstances."[19]  "We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances . . . ."[20]

Defendant argues that Thomas knew only the following relevant information when he began to question him about possible drug activity: that Defendant had been in Las Vegas for a week, that there was one suitcase for two travelers, that the vehicle was registered to Defendant's cousin, and that a picture of Jesus Malverde was affixed to the dash of the vehicle.

The Government argues that the following facts, known to Thomas before he asked for consent, underpin a finding of reasonable suspicion: (1) the vehicle was registered to a third party, (2) Defendant could not provide detailed information about the registered owner whom he claimed to be his cousin, (3) Thomas could see that parts of the dash were glued on, and that the seat belts were scarred, which could lead a trained officer to suspect hidden compartments, (4) Thomas observed a picture of Jesus Malverde, which a trained officer would know to be the patron saint of drug traffickers, was on the dash, and a necklace of the same was around Defendant's neck, (5) a rose and air freshener were in the vehicle, which a trained officer would suspect to be potential scent maskers, (6) there were three cell phones in the vehicle with two passengers, which a trained officer would suspect as a possible sign of drug trafficking, (7) there was inadequate luggage for a two-person, week-long trip to Las Vegas, (8) when Defendant first got out of the vehicle, he automatically, and unsolicited, assumed a "frisk" position,

---

[19]*United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (internal quotation and citation omitted).

[20]*United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997).

(9) Defendant set forth either conflicting stories on his prior week's activities, or could not provide any detail on them, (10) Defendant, at some point, insured, but did not own, the vehicle, (11) Defendant said that the owner was in Mexico, but the registration showed an address in Kansas, and (12) Defendant made an unsolicited comment that a friend had taken his vehicle overnight, from which a trained officer could suspect a preemptive excuse for the presence of drugs or other contraband in the vehicle.

  The Court agrees with the Government that there is ample evidence of, and that the totality of the circumstances shows that Thomas had an objectively reasonable and articulable suspicion of illegal drug activity as the traffic stop progressed, up to and including the points in time in which he began inquiring as to the presence of drugs and when he asked Defendant for consent to search the vehicle.  In doing so, the Court notes that Defendant incorrectly minimizes or omits certain of the above factors upon the basis that Thomas either did not state them aloud to himself or in the call to Sergeant Bauer.  However, Thomas testified at the hearing that while speaking aloud to himself and to Sergeant Bauer, he simply did not audibly articulate everything he had noticed.  The Court is satisfied with this explanation, and does not believe that an officer's failure to recite aloud the factors upon which reasonable suspicion or probable cause are based obviates or proves the absence of those factors.  Also, as more fully set forth below, "[b]ecause the detention did not violate the Defendant's Fourth Amendment rights, the subsequent consensual search of [Defendant's vehicle] was not tainted."[21]

---

[21] *Gonzalez-Lerma*, 14 F.3d at 1484.

   *ii. Voluntary Consent*

 Defendant disputes the voluntariness of his consent upon the basis that his documents had not been returned by Thomas when the latter requested consent to search the vehicle. The Government argues that Defendant's consent was voluntary, and that there is no evidence of coercion.

 "The voluntariness of consent must be determined from the totality of the circumstances, and the government bears the burden of proof on the issue."[22] "[T]he government must show that there was no duress or coercion, express or implied, that the consent was unquivocal and specific, and that it was freely and intelligently given."[23] The Court also notes that "[c]onsent . . . may be voluntary even though the consenting party is being detained [or held pursuant to an unconsensual encounter] at the time consent is given."[24]

 In *United States v. Soto*,[25] the defendant had been detained because a police officer was withholding his license and registration. The Tenth Circuit "recognize[d] that any individual being subjected to an investigative detention will feel some degree of compulsion to acquiesce to an officer's request."[26] Nonetheless, the court concluded that the consent was voluntary because there was no evidence of overt coercion based on the following points: the officer did not

---

[22] 988 F.2d 1548, 1557 (10th Cir. 1993).

[23] *Id*.

[24] *Doyle*, 129 F.3d at 1377.

[25] *Id.* at 1557-58.

[26] *Id.*

unholster his weapon, did not use an insisting tone or manner, did not physically harass defendant, and no other officers were present; the incident occurred on the shoulder of an interstate highway, in public view; and defendant made no contention that he misunderstood the officer's request.[27]

The Government argues that the factors leading to a finding of voluntary consent in the *Soto* case are present in this case. The Court agrees. Here, like in the *Soto* case, the officer did not unholster his weapon, did not use an insisting tone or manner, did not physically harass Defendant, and no other officers were present. The incident occurred on the shoulder of an interstate highway, and in public view. Defendant makes no contention that he misunderstood the officer's request. Defendant's consent was unequivocal and specific because he responded "yeah" when Thomas asked for consent to search the vehicle. There are no facts which support that Defendant limited the scope of his consent in any manner. Therefore, the Court finds that the Government has met its burden in showing that there was no duress or coercion, express or implied, that the consent was unquivocal and specific, and that it was freely and intelligently given.

C.  Probable Cause

The Court need not address the issue of probable cause based on its finding that Defendant does not have standing for his Motion, and that, even if he did, the evidence could not be suppressed because he gave Thomas valid consent to search the vehicle. Even so, the Court notes that there was probable cause to search the vehicle.

---

[27]*Id.*

Probable cause "requires only a probability or substantial chance of criminal activity, [and] not an actual showing of such activity."[28] "Probable cause to search a vehicle is established if, under the totality of the circumstances there is a fair probability that the car contains contraband or evidence."[29] The Court finds that considering the abundance of evidence set forth above as to reasonable suspicion, the Government has shown a probability or substantial chance of criminal activity sufficient to constitute probable cause.[30]

### III.  CONCLUSION

Based upon the above-cited facts and applicable case law, the Court finds (1) that Defendant does not have standing to bring his Motion, (2) that, even if he did, the Motion would be denied because he gave valid consent for his vehicle to be searched, and (3) Thomas had probable cause to search the vehicle.  It is therefore

ORDERED that Defendant's Motion to Suppress Evidence (Docket No. 13) is DENIED. The drugs found in the vehicle are admissible against Defendant in this case.  It is further

ORDERED that the time from the filing of the Motion to Suppress, January 19, 2006, through the date of this order, is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. §§ 3161(h)(1)(F) and (J).

---

[28] *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983).

[29] *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004).

[30] Importantly, the Tenth Circuit has held that "in certain instances, evidence of a hidden compartment can alone give rise to probable cause." *United States v. Stephenson*, 452 F.3d 1173, 1177 (10th Cir. 2006).

DATED   November 21, 2006.

                    BY THE COURT:

                    _____
                    TED STEWART
                    United States District Judge